Jeffrey J. Chapman
Daniel A. Goldfried
Robert J. Denicola
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
(212) 548-2100
*Attorneys for Plaintiff Biofrontera AG*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BIOFRONTERA AG,

                Plaintiff,

     v.

DEUTSCHE BALATON AG**,** AXXION,
S.A., DELPHI
UNTERNEHMENSBERATUNG AG, VV
BETEILIGUNGEN AG, ABC
BETEILIGUNGEN AG, DEUTSCHE
BALATON BIOTECH AG, and WILHELM
KONRAD THOMAS ZOURS

             Defendants.

Civil Action No. 18-cv-5237

**<u>Jury Trial Demanded</u>**

---

## <u>COMPLAINT</u>

Plaintiff Biofrontera AG ("Plaintiff" or "Biofrontera") by its undersigned counsel alleges

upon knowledge to itself and its own acts, and upon information and belief as to all other matters,

as follows:

### INTRODUCTION

1.      Defendants Deutsche Balaton AG ("Deutsche Balaton"), Wilhelm Konrad Thomas

Zours ("Zours"), DELPHI Unternehmensberatung AG ("DELPHI"), VV Beteiligungen AG

("VVB"), ABC Beteiligungen AG ("ABC"), Deutsche Balaton Biotech AG ("DB Biotech"), and

Axxion S.A. ("Axxion") (collectively, "Defendants") have engaged in a series of willful illegal acts that damaged Biofrontera and its shareholders, officers, directors and other stakeholders.

2. Zours, who controls, directly or indirectly, DELPHI, VVB, Deutsche Balaton, ABC, and DB Biotech, is a major beneficial owner of shares of Biofrontera. Zours owns greater than 50% of the shares of DELPHI, DELPHI owns greater than 50% of the shares of VVB, VVB owns greater than 50% of the shares of Deutsche Balaton, and Deutsche Balaton owns 100% of the shares of both DB Biotech and ABC.

3. Biofrontera's American Depositary Shares ("ADSs"), each representing two of its shares, are registered under the United States Securities Exchange Act of 1934, as amended (the "34 Act"), and the ADSs are traded in New York on The NASDAQ Capital Market. The actions of Defendants violated U.S. federal and state law, as detailed below.

4. On February 6, 2018, Deutsche Balaton and Zours published to third parties on Deutsche Balaton's website a defamatory letter that contained multiple statements that Deutsche Balaton and Zours knew were false, including claims that Biofrontera's chief executive officer and chief financial officer were unfit for duty and had engaged in criminal activity. This letter was carefully timed to injure Biofrontera, as it was published while Biofrontera's management was participating in a lengthy road show to present the public offering of ADSs (the "U.S. IPO") to potential investors in the United States. Notwithstanding such interference and injury, the U.S. IPO closed and the ADSs began trading on The NASDAQ Capital Market on February 14, 2018.

5. Deutsche Balaton publicly announced a tender offer for Biofrontera shares on March 16, 2018. The stated intention of the tender offer was to exceed the "blocking" minority threshold of 25% of Biofrontera's shares. German regulatory authorities did not allow this tender offer to proceed because it did not comply with German law.

6.     Separate from Deutsche Balaton's prohibited tender offer, upon information and belief, Zours, DELPHI, ABC, VVB and Deutsche Balaton agreed with Axxion to form a group for the purpose of acquiring, holding, and/or voting shares of Biofrontera.  Defendants acquired or held shares of Biofrontera for the purpose of effecting or influencing control of Biofrontera.  When two or more persons act as a group "for the purpose of acquiring, holding, or disposing of securities of an issuer," the group is deemed to be a person under Section 13(d)(3) of the 34 Act.  Each member of the group is deemed to have acquired beneficial ownership of all shares of the issuer owned by any member of the group.  Upon information and belief, Deutsche Balaton, Zours, DELPHI, ABC, VVB and Axxion acted as a group for the purpose of acquiring or holding shares of Biofrontera and should have filed with the U.S. Securities and Exchange Commission's ("SEC") a beneficial ownership report on a Schedule 13D, which they have not done.

7.     Zours, DELPHI and Deutsche Balaton each have a beneficial ownership of greater than 5% of Biofrontera's shares, and, upon information and belief, Zours, DELPHI and Deutsche Balaton together have increased the percentage of Biofrontera's shares over which they exercise voting power by more than 5% of Biofrontera's total outstanding shares since the completion of Biofrontera's U.S. IPO and registration of Biofrontera's shares under Section 12 of the 34 Act. This makes Zours and Deutsche Balaton subject to Section 13(d)(1) of the 34 Act and SEC Regulation 13D-G.  Pursuant to Section 13(d)(1) and the SEC's Rule 13d-1(a), Zours and Deutsche Balaton were required to file a beneficial ownership report on Schedule 13D with the SEC within 10 days after acquiring at least 2% of Biofrontera's shares following registration of Biofrontera's shares under Section 12 of the 34 Act, but to date have not done so.

8.     Further, Zours, Deutsche Balaton, DELPHI, ABC, VVB, and Axxion, despite acquiring or holding Biofrontera's shares with a purpose or effect of changing or influencing

3

control of Biofrontera, never filed a beneficial ownership report on Schedule 13D (or amendment thereto) with the SEC, which they were required to do within 10 days after acquiring at least 2% of Biofrontera's shares following registration of Biofrontera's shares under Section 12 of the 34 Act.  Their failure to do so has deceived U.S. investors by not providing them with information regarding the group's holdings and their purpose or effect of changing or influencing control of Biofrontera.

9.      Until they file a compliant Schedule 13D with the SEC, and for a further six months after such filing, Zours, DELPHI, ABC, VVB, Deutsche Balaton, and Axxion, and their affiliates should be barred from taking advantage of their violation and the Court should award curative relief as set forth in the Complaint.

10.     Deutsche Balaton's illegal conduct continued on May 28, 2018.  Specifically, Deutsche Balaton directed its wholly-owned subsidiary DB Biotech to publicly announce and launch another tender offer that all holders of ADSs in the United States are able to access, receive, review and participate in.  As part of the offer, DB Biotech offered to purchase up to 6,250,000 Biofrontera shares in exchange for per-share consideration consisting of one euro plus an option entitling the holder thereof to purchase a Biofrontera share for the price of one euro.  The option offered by DB Biotech is a complex security that, combined with the one euro consideration, has the effect of separating the voting power of tendered Biofrontera shares from exposure to the economic value of those shares.  Upon information and belief, the offer documents were drafted to allow for participation by U.S. investors because under German law, all of Biofrontera's shareholders, wherever located, must be permitted to participate in the offer.  U.S. ADSs holders could participate in the offer simply by exchanging their ADSs for Biofrontera's ordinary shares pursuant to Biofrontera's Deposit Agreement with The Bank of New York.   The offer was

4

published on Deutsche Balaton's website, and Deutsche Balaton has taken no measures to prevent U.S. investors from accessing the offer documents.

11.     In addition, NASDAQ rules require Biofrontera to disclose promptly to the U.S. market the receipt of any tender offer for its listed shares; NASDAQ's preferred method for this disclosure is a press release.  Biofrontera disclosed the receipt of the tender offer via a press release, as required.  Upon information and belief, as a sophisticated investor, Zours knew of these publicity requirements, and used them to force Biofrontera to indirectly publicize the existence of the tender offer in the United States.

12.     Pursuant to Section 5 of the U.S. Securities Act of 1933, as amended (the "33 Act"), unless a registration statement is in effect as to a security, it is unlawful for any person, directly or indirectly, to make use of any means or instruments of interstate commerce in order to sell or offer for sale such security.  The tender offer constitutes a public offering of the options forming part of the tender offer consideration in the U.S., as U.S. ADSs holders can participate by exchanging ADSs for Biofrontera's ordinary shares, and DB Biotech has taken no action to register the options forming part of the proposed tender offer consideration with the SEC.  When deciding whether to exchange their Biofrontera shares for the complex option to be issued by DB Biotech, U.S. investors should have the benefit of complete disclosures required to be included in a registration statement under the 33 Act and related SEC rules.

13.     Moreover, no exemption from the registration requirements of Section 5 of the 33 Act will be available to DB Biotech in connection with its tender offer because (a) DB Biotech is required under German law to accept tenders from all holders of its shares, including holders of ADSs who exchange their ADSs for shares in order to tender them, wherever they are located and regardless of whether they qualify as "accredited investors" as defined under applicable SEC rules

and regulations and (b) DB Biotech has taken no measures to prevent U.S. investors from accessing the offer materials available on Deutsche Balaton's website even though it is a wholly-owned subsidiary of a sophisticated investor, Deutsche Balaton, which presumably knew that Biofrontera must publicize the receipt of the tender offer in the U.S.

14.     Because Deutsche Balaton Biotech AG has not registered the options comprising part of the tender offer consideration and because no exemption from registration will be available, the tender offer violates Section 5 of the 33 Act.

15.     The same day as the May 28, 2018 tender offer, Deutsche Balaton and Zours launched another defamatory attack on Biofrontera.  Deutsche Balaton and Zours published an open letter to Biofrontera supervisory board member John Borer on Deutsche Balaton's website that was accessible to all, including U.S. holders of Biofrontera's ADS.  That letter contained a number of false and misleading statements regarding Mr. Borer, Biofrontera's chief executive officer Dr. Hermann Lübbert, and Biofrontera's chief financial officer Thomas Schaffer, including claims that the U.S. IPO was unlawfully conducted.

## JURISDICTION AND VENUE

16.     This action arises under Section 13(d) of the 34 Act (15 U.S.C. § 78m(d)), Section 14(e) of the 34 Act (15 U.S.C. § 78n(e)), Section 20(a) of the 34 Act (15 U.S.C. § 78t(a)), and the rules and regulations promulgated thereunder.

17.     Jurisdiction over the subject matter of this action is based upon 28 U.S.C. § 1331 and Section 27 of the 34 Act (15 U.S.C. § 78aa).  Jurisdiction of the subject matter state law claims (Counts I – III), is based upon 28 U.S.C. § 1367.

18.     Personal jurisdiction over Defendants for Biofrontera's 34 Act claims (Counts IV, V, VI, and VII) is based on 15 U.S.C. § 78aa.  Personal jurisdiction over Deutsche Balaton and Zours for Biofrontera's state law claims (Counts I – III) is based on pendant personal jurisdiction

because Biofrontera's state law claims derive from the same common nucleus of operative facts as Biofrontera's 34 Act claims. Further, this Court has personal jurisdiction over all Defendants because each of the Defendants directed the conduct described in this Complaint towards the United States (the forum state), impacting the value of the ADSs, which trade on NASDAQ, and because Deutsche Balaton indirectly owns a controlling share of Beta Systems Software of North America, Incorporated, a McLean, Virginia-based corporation. Jurisdictional discovery in this action shall reveal additional information regarding Defendants' jurisdictional actions.

19.     Venue in this district is proper pursuant to Section 27 of the 34 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(d).

20.     Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding the propriety of Defendants' actions and their failure to make required disclosures under Section 13(d) of the 34 Act, their violation of SEC Rule 14e-5(a) by purchasing Biofrontera shares during its subsidiary's tender offer, and their violation of Section 14(e) of the 34 Act by making untrue and misleading statements of material fact and employing fraudulent, deceptive, and manipulatives acts and practices in connection with DB Biotech's tender offer.

**THE PARTIES**

21.     Plaintiff Biofrontera AG is a German stock corporation with headquarters in Leverkusen, Germany. The U.S. headquarters of its wholly-owned U.S. subsidiary, Biofrontera Inc., is in Wakefield, Massachusetts. Biofrontera AG is an international biopharmaceutical company specializing in the development and commercialization of pharmaceutical products for the treatment of dermatological conditions and diseases caused primarily by exposure to sunlight. Biofrontera's approved products focus on the treatment in the U.S. and Europe of actinic keratoses, which are skin lesions that can sometimes lead to skin cancer, as well as the treatment of certain forms of basal cell carcinoma in the European Union. A majority of the revenue of Biofrontera

and its subsidiaries is derived from the U.S. business and operations and the percentage of revenue generated in the U.S. is expected to grow.  On February 14, 2018, Biofrontera completed its United States initial public offering of ADSs, which trade on The NASDAQ Capital Market.

22.     Defendant Zours, directly or indirectly, controls Defendants DELPHI, VVB, Deutsche Balaton, ABC, and DB Biotech.  Zours owns greater than 50% of the shares of Defendant DELPHI, a corporation based in Heidelberg, Germany.  DELPHI owns greater than 50% of the shares of Defendant VVB, a corporation based in Heidelberg, Germany.  VVB owns greater than 50% of the shares of Defendant Deutsche Balaton, an investment fund based in Heidelberg, Germany.  Deutsche Balaton owns 100% of both Defendant DB Biotech and Defendant ABC, corporations based in Heidelberg, Germany.  According to public filings made in Germany by Deutsche Balaton, Zours beneficially owns 15.04% of Biofrontera's shares, including 9.18% beneficially owned by Deutsche Balaton, 5.81% beneficially owned by DELPHI, and the remainder beneficially owned by ABC.  Deutsche Balaton, DELPHI, ABC, and Zours, by acting in concert with Axxion to acquire, hold, and/or vote Biofrontera's shares, is deemed to beneficially own an additional 3.59% of the shares of Biofrontera.

23.     Deutsche Balaton owns 53% of Beta Systems Software AG based in Berlin, Germany.  Beta Systems Software AG owns 100% of Beta Systems Software of North America, Inc. based in McLean, Virginia.

24.     Axxion is an investment fund based in Grevenmacher, Luxembourg.  Axxion owns 3.59% of Biofrontera's shares.  Axxion is managed by Gregor Zours, who upon information and belief is the cousin of Zours.

**FACTS**

**Zours and Deutsche Balaton's Unlawful Efforts to Control Biofrontera Through Defamation of its Directors and Officers**

25.      Zours and Deutsche Balaton have long been interested in investing in Biofrontera based on the company's value and potential for growth.  However, Zours and Deutsche Balaton have repeatedly attempted to control Biofrontera without obtaining a controlling stake in the company.  Thus, Zours and Deutsche Balaton have begun and continue a campaign to injure Biofrontera and its officers, directors and other stakeholders without actually obtaining control.

26.      In February 2018, Biofrontera participated in an extensive road show throughout the U.S., in which Biofrontera representatives met with potential investors.  This was a critical period in the U.S. IPO process, as the number and level of interest of potential purchasers would directly correlate with the U.S. IPO price.

27.      It was precisely because of the importance of the U.S. road show that Deutsche Balaton and Zours launched their defamatory and illegal attack during the road show.  Specifically, on February 6, 2018, Zours and Deutsche Balaton published a letter on Deutsche Balaton's website that was accessible to all, including potential investors in the U.S. IPO, that contained a number of false and misleading statements, including but not limited to the following:

- Biofrontera's decision to allow the setting of the U.S. IPO subscription price to take place on Friday, February 9, 2018 was "contrary to the law and unethical",

- Biofrontera's chief financial officer Thomas Schaffer "misled the shareholders at the 2017 Shareholder's General Meeting" concerning the terms of a company loan, that Mr. Schaffer's actions were unethical and contrary to law," and that he is unable to serve as chief financial officer,

- Biofrontera "deceitfully" withheld confirmation about a research partnership with Maruho,

- Biofrontera's chief executive officer Dr. Hermann Lübbert provided "internal company information" to Maruho and thus is "liable to prosecution".

28.     These statements were published on the Internet and accessible by prospective purchasers of Biofrontera's ADS in the U.S. IPO during the U.S. road show in February 2018. These statements are all false and misleading and were published by Zours and Deutsche Balaton with negligence and/or actual malice.

29.     Deutsche Balaton and Zours launched another defamatory attack on Biofrontera on May 28, 2018.  On Deutsche Balaton's website, Deutsche Balaton and Zours published an open letter to Biofrontera supervisory board member John Borer accessible to U.S. holders of Biofrontera's ADS.  The letter contained a number of false and misleading statements regarding Biofrontera, Mr. Borer, Mr. Schaffer, and Dr. Lübbert, including but not limited to the following:

- The bookbuilding process in the U.S. was "only a fake bookbuilding"

- The U.S. IPO involved an "unlawful share placement at a 30% discount to market price."

- In the U.S. IPO, Dr. Lübbert did "not accept[] higher bids for shares than 4 Euro to stop . . . egoistic shareholders from taking advantage of the company and the other Biofrontera shareholders."

30.     These statements were published on the Internet and accessible by all U.S. holders of Biofrontera's ADS.  These statements are false and misleading and were published by Deutsche Balaton and Zours with negligence and/or actual malice.

**Deutsche Balaton Engaged in a Continuing Violation of Section 13(d) by Failing to Reveal its Ownership Interest in Biofrontera in a Schedule 13D Filing**

31.     Section 13(d)(1) of the 34 Act mandates that any person who after acquiring directly or indirectly the beneficial ownership of more than 5% of a class of equity securities of an issuing corporation when such class has been registered under Section 12 of the 34 Act, within 10 days after such acquisition, must file with the SEC a beneficial ownership report on Schedule 13D and send the statement to the issuer.  Both Zours and Deutsche Balaton have failed to so file or send the required Schedule 13D.

32.    Section 13(d)(6)(B) of the 34 Act provides that shareholders who beneficially own 5% or more of a class of shares at the time such class becomes subject to Section 13(d)(1) need not comply with Section 13(d)(1) until such shareholders purchase more than 2% of such class of shares in a given 12-month period.  Because both Zours and Deutsche Balaton have acquired beneficial ownership of more than 2% of Biofrontera's shares since Biofrontera completed its U.S. IPO, they may not take advantage of the Section 13(d)(6)(B) exemption.

33.    Among the information that must be provided on Schedule 13D is:

"(B)    the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of the transaction and the names of the parties thereto ...;"

"(C)    if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals: which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;"

"(D)    the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate;" and

"(E)    information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof."

34.    When two or more persons act as a group "for the purpose of acquiring, holding, or disposing of securities of an issuer," the group is deemed to be a person under Section 13(d)(3) of the 34 Act.  Each member of the group is deemed to have acquired beneficial ownership of all

shares of the issuer owned by any member of the group.  Upon information and belief, Deutsche Balaton, Zours, DELPHI, ABC, VVB and Axxion acted as a group for the purpose of acquiring, holding, and/or voting shares of Biofrontera.  In February 2016, Deutsche Balaton and Biofrontera negotiated that Deutsche Balaton would purchase a total of approximately 2.4 million shares of Biofrontera, excluding the shareholders' subscription rights.  Deutsche Balaton announced shortly before the sale that it intended to distribute the shares among its various acquisition vehicles. Deutsche Balaton and Axxion each acquired one million shares of Biofrontera, and DELPHI acquired the remainder of the purchased shares.  At Biofrontera's 2016 and 2017 Annual General Meetings, Zours and Axxion – who was represented at the meetings by Gregor Zours – voted identically on each item at each of these meetings.  Because Defendants have acted as a group for the purpose of acquiring, holding, and/or voting securities of Biofrontera, they as a group are deemed a "person" under Section 13(d).

35.     As a result of the U.S. IPO and on a continuing basis thereafter, the group comprising Deutsche Balaton, Zours, DELPHI, ABC, VVB and Axxion has beneficially owned more than 5% of the outstanding shares of Biofrontera.  Nevertheless, Deutsche Balaton, Zours, DELPHI, ABC, VVB, and Axxion have failed to file a beneficial ownership report on Schedule 13D, despite being informed of their obligation by Biofrontera in correspondence dated March 14, 2018 and despite, upon information and belief, acting as a group to acquire, hold, and/or vote Biofrontera's shares for the purpose or effect of changing or influencing control of Biofrontera.

36.     Even if Defendants did not acquire or hold Biofrontera's shares with the purpose or intent of changing or influencing control of Biofrontera at the time of the U.S. IPO, they would have been required to file a Schedule 13D within 10 days after they acquired beneficial ownership

of an additional 2% or more of Biofrontera's shares following completion of Biofrontera's U.S. IPO.

**Deutsche Balaton Conducts A Tender Offer in Violation of Section 5 of the 33 Act**

37.     Deutsche Balaton continued its illegal conduct by launching an illegal tender offer on May 28, 2018.  Specifically, Deutsche Balaton directed DB Biotech to publicly announce and launch a tender offer for Biofrontera's shares.  DB Biotech made the offer documents available on Deutsche Balaton's website.  All holders of ADSs in the United States are able to access, receive, review, and participate in the tender offer.  As part of the public offer, DB Biotech offered to purchase up to 6,250,000 Biofrontera shares in exchange for per-share consideration consisting of one euro plus an option entitling the holder thereof to purchase a Biofrontera share for the price of one euro.  The option offered by DB Biotech is a complex security that, combined with the one euro consideration, has the effect of separating the voting power of tendered Biofrontera shares from exposure to the economic value of those shares.

38.     Upon information and belief, the offer documents were drafted to allow for participation by U.S. investors.  DB Biotech took no measures to prevent U.S. investors from being able to access the offer documents, which were published on Deutsche Balaton's website.  Moreover, under German law, all of Biofrontera's shareholders, wherever located, must be permitted to participate in the offer.

39.     In addition, NASDAQ rules require Biofrontera to disclose promptly to the U.S. market the receipt of any tender offer for its listed shares; NASDAQ's preferred method for this disclosure is a press release.  Biofrontera disclosed the receipt of the tender offer via a press release, as required.  Upon information and belief, as a sophisticated institutional investor, Zours knew of these publicity requirements, and used them to force Biofrontera to indirectly publicize the existence of the tender offer in the United States.

40.     Under Section 5 of the 33 Act, unless a registration statement is in effect as to a security or an exemption is available, it is unlawful for any person, directly or indirectly, to make use of any means or instruments of interstate commerce in order to sell or offer for sale such security.  Investors in the U.S. should not be called upon to make a decision to exchange their Biofrontera shares for the complex option publicly offered by DB Biotech without the benefit of complete disclosures that would be required to be included in a registration statement under the 33 Act and related SEC rules.

41.     Although DB Biotech's tender offer constitutes a public offering of the options forming part of the tender offer consideration in the U.S., DB Biotech has taken no action to register such options with the SEC.

42.     No exemption from Section 5's registration requirements are available to DB Biotech because:  (a) DB Biotech is required under German law to accept tender from all holders of its shares, including holders of ADSs, wherever they are located and regardless of whether they qualify as "accredited investors" as defined under applicable SEC rules and regulations; and (b) DB Biotech has taken no measures to prevent U.S. investors, including non-accredited investors, from accessing the offer materials available on its website.

43.     Because DB Biotech has not registered with the SEC the options comprising part of the tender offer consideration and because no exemption from registration will be available, the tender offer violates Section 5 of the 33 Act.

44.     In addition, upon information and belief, Deutsche Balaton and Zours each purchased additional shares of Biofrontera after public announcements by Deutsche Balaton and DB Biotech of their tender offers, which is in direct violation of Rule 14e-5 of the 34 Act, which states "… no covered person may directly or indirectly purchase or arrange to purchase any subject

14

securities or any related securities except as part of the tender offer." Deutsche Balaton and Zours are clearly in violation of Rule 14e-5 as they are covered persons under the definition.

**Deutsche Balaton Made Its False and Defamatory Statements Regarding Biofrontera in Connection with Its Tender Offers in Violation of Section 14(e) of the 34 Act**

45.     Section 14(e) of the 34 Act makes it unlawful to make any untrue or misleading statement of material fact or to engage in any fraudulent, deceptive or manipulative acts or practices in connection with any tender offer. By publishing their false and defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions, Deutsche Balaton and Zours made misleading and untrue statements of material fact and engaged in deceptive and manipulative acts and practices in connection with the tender offer by DB Biotech.

46.     Deutsche Balaton and Zours knowingly or recklessly made false and misleading defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions in connection with DB Biotech's tender offer. Deutsche Balaton and Zours' statements were material because reasonable Biofrontera investors, in deciding whether to purchase, hold, tender, or sell Biofrontera shares, would have considered it important whether Biofrontera's officers and directors are competent and running Biofrontera in compliance with relevant laws and regulations and whether the statements were made as part of an attempt by Deutsche Balaton and Zours to seize control of Biofrontera.

47.     These false and misleading defamatory statements were also deceptive and manipulative acts made in connection with the tender offer. Deutsche Balaton and Zours' statements were deceptive because they defame the competency of Biofrontera and its officers and directors, without disclosing that the intent of Deutsche Balaton and Zours in making those statements was to make DB Biotech's tender offer more appealing as an alternative to maintaining

the current management of Biofrontera.   Deutsche Balaton and Zours' statements were manipulative because they, upon information and belief, negatively impacted Biofrontera's share price during the tender offer period, thereby making DB Biotech's tender offer more appealing, and the price that DB Biotech must pay for Biofrontera's shares less than it otherwise would have been required to pay in the tender offer.

### Count I – Libel (Against Deutsche Balaton and Zours)

48.     Biofrontera repeats and realleges Paragraphs 1 – 47 as if fully set forth herein.

49.     Zours and Deutsche Balaton's February 6, 2018 and May 28, 2018 publicly issued letters contain multiple written defamatory statements concerning Biofrontera which were available to all on the Internet, including prospective investors in Biofrontera's shares by virtue of being published on Deutsche Balaton's website.

50.     The statements made in these publicly issued letters were false and misleading and, upon information and belief, Zours and Deutsche Balaton acted negligently and/or with actual knowledge or with reckless disregard to the falsity of such statements.

51.     The statements caused economic harm to Biofrontera by interfering with and obstructing its U.S. IPO and by diverting management's attention from its business and operations, and causing unnecessary legal and administrative costs and expenses and, in any event, are per se actionable because they tend to disparage Biofrontera and its officers and directors in their respective office or profession and impugn the basic integrity and competence of Biofrontera and its officers and directors.

### Count II – Trade Libel (Against Deutsche Balaton and Zours)

52.     Biofrontera repeats and realleges Paragraphs 1 – 51 as if fully set forth herein.

53.     By publicly issuing the February 6, 2018 and May 28, 2018 letters, Zours and Deutsche Balaton knowingly published false and derogatory facts about Biofrontera's business

that, based on their timing and content, were calculated to try to prevent prospective investors from properly assessing Biofrontera and its business during the U.S. road show and U.S. IPO.  Zours and Deutsche Balaton's false and misleading defamatory statements caused injuries to Biofrontera's prospective business opportunities because those statements negatively impacted Biofrontera's reputation as a responsible and well-run company.

### Count III – Tortious Interference with Prospective Business Opportunity (Against Deutsche Balaton and Zours)

54.     Biofrontera repeats and realleges Paragraphs 1 – 53 as if fully set forth hereby.

55.     Zours and Deutsche Balaton knew that in February 2018, Biofrontera was conducting a U.S. road show and soliciting prospective investors in the U.S. to support its U.S. IPO.  Zours and Deutsche Balaton intentionally interfered with Biofrontera's relationship with existing and potential investors and others with whom they do business by publishing the false and misleading and defamatory statements on Deutsche Balaton's website in their February 6, 2018 and May 28, 2018 letters.

56.     Zours and Deutsche Balaton acted out of malice in so doing and used dishonest and unfair means to disrupt the relationship between Biofrontera and its existing and potential investors and others with whom they do business.

57.     Zours and Deutsche Balaton's false and misleading defamatory statements caused injuries to Biofrontera's prospective business opportunities because those statements negatively impacted Biofrontera's reputation as a responsible and well-run company.

### Count IV – Violation of Section 13(d) of the 34 Act and SEC Rules Promulgated Thereunder (Against Deutsche Balaton, DELPHI, ABC, Zours, and Axxion)

58.     Biofrontera repeats and realleges paragraphs 1 – 57 as if fully set forth herein.

59.     By virtue of their beneficial ownership of more than 5% of Biofrontera's shares and their acquisition since the U.S. IPO of beneficial ownership of an additional 2% or more of Biofrontera's shares, Zours and Deutsche Balaton were required to file with the SEC a beneficial ownership report on Schedule 13D with the SEC and willfully failed to do so, notwithstanding their notice thereof.

60.     Upon information and belief, at the time of the U.S. IPO, Zours, DELPHI, ABC, VVB, and Deutsche Balaton had agreed with Axxion to form a group for the purpose of acquiring, holding, and/or voting shares of Biofrontera.  Zours, DELPHI, ABC, VVB and Deutsche Balaton together held beneficial ownership of more than 5% of Biofrontera's shares for a purpose or effect of changing or influencing control of Biofrontera.  As a result, Zours, DELPHI, ABC, VVB, Deutsche Balaton, and Axxion were required to file a beneficial ownership report on Schedule 13D with the SEC within 10 days after they acquired 2% of the shares of Biofrontera after the U.S. IPO.  Defendants have failed to a Schedule 13D despite this obligation.

61.     Zours, Deutsche Balaton, DELPHI, ABC, VVB, and Axxion are obligated to correct their violations of law by immediately filing with the SEC an accurate beneficial ownership report on Schedule 13D.  Further, in order to prevent Zours, DELPHI, Deutsche Balaton, ABC, VVB and Axxion from benefitting from their violation of Section 13(d) of the 34 Act, the Court should enter an order barring, Defendants and their affiliates from voting any of the shares controlled or beneficially owned by them, whether directly or indirectly, acquiring any shares, or taking other steps to acquire any shares or otherwise change or influence control of Biofrontera, until their beneficial ownership report on Schedule 13D is filed with the SEC and a further six months have elapsed.  Absent such relief, Defendants and their affiliates could join with other shareholders to attempt to take over, change, or influence control of Biofrontera, change

management or take other actions after actively concealing information required to be disclosed to the public under Section 13(d) of the 34 Act. Section 13(d) entitles the Biofrontera shareholders and other investors and potential investors to complete and accurate information before acquiring, selling, casting a vote or otherwise making investment decisions with respect to its shares, and sufficient time for Biofrontera to review, and respond to any such Schedule 13D filing. There is no adequate remedy at law.

### Count V – Violation of Section 14(e) of the 34 Act and SEC Rule 14e-5 (Against Deutsche Balaton and Zours)

62.     Biofrontera repeats and realleges Paragraph 1 – 61 as if fully set forth herein.

63.     SEC Rule 14e-5(a) of the 34 Act, promulgated under Section 14(e) of the 34 Act, makes it unlawful for covered persons "to directly or indirectly purchase or arrange to purchase any subject securities or any related securities except as part of the tender offer." The "prohibition applies from the time of public announcement of the tender offer until the tender offer expires." 17 C.F.R. § 140.14e-5(a). A "covered person" includes the tender offeror, its control persons, and any person acting, directly or indirectly, in concert with the offeror or its affiliates. 17 C.F.R. §§ 240.12b-2, 240.14e-5(c)(3).

64.     Upon information and belief, Deutsche Balaton and Zours each purchased additional shares of Biofrontera after public announcements by Deutsche Balaton and DB Biotech of their tender offers for Biofrontera's shares and before the expiration of the tender offer. Deutsche Balaton and Zours are covered persons under Rule 14e-5(a) as control persons of offeror DB Biotech, and as a result their share purchases during the period of the tender offers violated Rule 14e-5.

65.     As a result, Deutsche Balaton and Zours violated Rule 14e-5(a). This Court should enjoin Deutsche Balaton and Zours and their affiliates from purchasing any additional Biofrontera

shares or voting any shares that they purchased during the tender offers for a period of six months to prevent them from benefitting from their violation of Rule 14e-5(a).  There is no adequate remedy at law.

**Count VI – Violation of Section 14(e) of the 34 Act (Against Deutsche Balaton and Zours)**

66.     Biofrontera repeats and realleges Paragraph 1 – 65 as if fully set forth herein.

67.     Section 14(e) of the 34 Act makes it "unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer."

68.     By publishing their false and defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions, Deutsche Balaton and Zours made misleading and untrue statements of material fact and engaged in deceptive and manipulative acts and practices in connection with the tender offer by DB Biotech.

69.     Deutsche Balaton and Zours' false and misleading defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions were made in connection with DB Biotech's tender offer.  Deutsche Balaton and Zours knowingly or recklessly made these statements.   These false and misleading defamatory statements were material because reasonable Biofrontera investors, in deciding whether to purchase, hold, tender, or sell Biofrontera shares, would have considered it important whether Biofrontera's officers and directors are competent and conducting the business and operations of Biofrontera in compliance with applicable laws and regulations and whether the statements were made as part of an attempt by Deutsche Balaton and Zours to seize control of Biofrontera.

70.     These false and misleading defamatory statements were also deceptive and manipulative acts made in connection with the tender offer.   Deutsche Balaton and Zours' statements were deceptive because they defame the competency of Biofrontera and its officers and directors, without disclosing that the intent of Deutsche Balaton and Zours in making those statements was to make DB Biotech's tender offer more appealing as an alternative to maintaining the current management of Biofrontera.   Deutsche Balaton and Zours' statements were manipulative because they, upon information and belief, negatively impacted Biofrontera's share price during the tender offer period, making DB Biotech's tender offer more appealing, and the price that DB Biotech must pay for Biofrontera's shares less than it otherwise would have been required to pay in the tender offer.

71.     Zours and Deutsche Balaton's false and misleading defamatory statements caused injuries to Biofrontera because those statements, upon information and belief, negatively impacted Biofrontera's share price.

72.     This Court should enjoin Deutsche Balaton and Zours and their affiliates from purchasing any additional Biofrontera shares or voting any shares that they purchased during the tender offers for a period of six months to prevent them from benefitting from their violation of Section 14(e).  There is no adequate remedy at law.

**Count VII – Control Person Liability under Section 20(a) of the 34 Act (Against Zours)**

73.     Biofrontera repeats and realleges Paragraphs 1-65 as if fully set forth herein.

74.     Under Section 20(a) of the 34 Act, [e]very person who, directly or indirectly, controls any person liable under any provision of this title or any rule or regulation thereunder shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable." To plead a prima facie case of Section 20(a)

liability, a plaintiff must also plead facts demonstrating that the controlling person knew or should have known that the controlled person was engaging in violations of U.S. securities laws.

75.    Counts IV, V, and VI allege underlying primary violations by Deutsche Balaton of Section 13 and Section 14 of the 34 Act and the underlying regulations.

76.    Upon information and belief, including public filings in Germany on May 27, 2016, Zours controls Deutsche Balaton by virtue of ownership of securities.  Upon information and belief, by virtue of share ownership, Zours possesses actual power and influence over Deutsche Balaton, including the ability to cause Deutsche Balaton to make or omit to make securities filings and other documents necessary to comply with U.S. law.

77.    Upon information and belief, Zours knew or should have known of the securities law violations set forth in Counts IV, V, and VI by virtue of (i) his close knowledge and participation in the management and affairs of Deutsche Balaton, (ii) his awareness of the disclosure and filing requirements of U.S. Securities law, and (iii) a March 14, 2018 correspondence sent by Biofrontera reminding Deutsche Balaton of its obligations under Section 13 of the 34 Act.

WHEREFORE, Biofrontera prays for a judgment against Defendants Deutsche Balaton, DELPHI, VVB, Zours, DB Biotech, ABC, and Axxion as follows:

a)  awarding compensatory damages in an amount determined at trial;

b)  awarding punitive damages in an amount to be determined at trial;

c)  declaring that Deutsche Balaton, DELPHI, ABC, VVB, Zours, and Axxion violated Section 13(d) of the 34 Act on Count IV;

d)   ordering pursuant to Count IV that Deutsche Balaton, Zours, DELPHI, ABC, VVB and Axxion and their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them:

    (i)   immediately file with the SEC in accordance with Section 13 of the 34 Act a complete and accurate beneficial ownership report on Schedule 13D;

    (ii)   are enjoined from voting any of their shares, acquiring any shares or otherwise trying to acquire shares of or change or influence control of Biofrontera until six months after such complete and accurate Schedule 13(d) is filed;

e)   declaring that Deutsche Balaton and Zours violated Section 14(e) of the 34 Act on Counts V and VI;

f)   ordering pursuant to Counts V and VI that Zours, Deutsche Balaton, DB Biotech and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are enjoined from purchasing any additional Biofrontera shares or voting any shares that they purchased during the tender offer for a period of six months;

g)   awarding attorney's fees and costs; and

h)   granting such other and further relief as the Court may deem just and proper.

Dated: New York, New York
       June 11, 2018

By:   *s/ Jeffrey J. Chapman*
       Jeffrey J. Chapman
       Daniel A. Goldfried
       Robert J. Denicola
       McGuireWoods LLP
       1251 Avenue of the Americas, 20th Floor
       New York, New York 10020
       (212) 548-2100
       *jchapman@mcguirewoods.com*
       *dgoldfried@mcguirewoods.com*
       *rdenicola@mcguirewoods.com*

       *Attorneys for Plaintiff Biofrontera AG*