Jeffrey J. Chapman
Aaron F. Jaroff
Lindsay Brandt Jakubowitz
McGuireWoods LLP
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
(212) 548-2100

*Attorneys for Plaintiff Biofrontera AG*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BIOFRONTERA AG, <br><br>     Plaintiff, <br><br>  v. <br><br> DEUTSCHE BALATON AG, DELPHI UNTERNEHMENSBERATUNG AG, VV BETEILIGUNGEN AG, ABC BETEILIGUNGEN AG, DEUTSCHE BALATON BIOTECH AG, and WILHELM KONRAD THOMAS ZOURS <br><br>     Defendants. | Civil Action No. 18-cv-5237 (LAP) <br><br> **Jury Trial Demanded** |

## AMENDED COMPLAINT

Plaintiff Biofrontera AG ("Plaintiff" or "Biofrontera") by its undersigned counsel alleges upon knowledge to itself and its own acts, and upon information and belief as to all other matters, as follows:

### INTRODUCTION

1. Defendants Deutsche Balaton AG ("Deutsche Balaton"), Wilhelm Konrad Thomas Zours ("Zours"), DELPHI Unternehmensberatung AG ("DELPHI"), VV Beteiligungen AG ("VVB"), ABC Beteiligungen AG ("ABC"), and Deutsche Balaton Biotech AG ("DB Biotech")

(collectively, "Defendants") have engaged in a series of willful illegal acts that damaged Biofrontera and its shareholders, officers, directors and other stakeholders.

2.      Zours, who controls, directly or indirectly, DELPHI, VVB, Deutsche Balaton, ABC, and DB Biotech, is a major beneficial owner of shares of Biofrontera.  Zours owns greater than 50% of the shares of DELPHI, DELPHI owns greater than 50% of the shares of VVB, VVB owns greater than 50% of the shares of Deutsche Balaton, and Deutsche Balaton owns 100% of the shares of both DB Biotech and ABC.

3.      Biofrontera's American Depositary Shares ("ADSs"), each representing two of its shares, are registered under the United States Securities Exchange Act of 1934, as amended (the "34 Act"), and the ADSs are traded in New York on The NASDAQ Capital Market.  The actions of Defendants violated U.S. federal and state law, as detailed below.

4.      On February 6, 2018, Deutsche Balaton and Zours published to third parties on Deutsche Balaton's website a defamatory letter that contained multiple statements that Deutsche Balaton and Zours knew were false, including claims that Biofrontera's chief executive officer and chief financial officer were unfit for duty and had engaged in criminal activity.  This letter was carefully timed to injure Biofrontera, as it was published while Biofrontera's management was participating in a lengthy road show to present the public offering of ADSs (the "U.S. IPO") to potential investors in the United States.  Notwithstanding such interference and injury, the U.S. IPO closed and the ADSs began trading on The NASDAQ Capital Market on February 14, 2018.

5.      Deutsche Balaton publicly announced a tender offer for Biofrontera shares on March 16, 2018.  The stated intention of the tender offer was to exceed the "blocking" minority threshold of 25% of Biofrontera's shares.  German regulatory authorities did not allow this tender offer to proceed because it did not comply with German law.

6.     Defendants acquired or held shares of Biofrontera for the purpose of effecting or influencing control of Biofrontera.  When two or more persons act as a group "for the purpose of acquiring, holding, or disposing of securities of an issuer," the group is deemed to be a person under Section 13(d)(3) of the 34 Act.  Each member of the group is deemed to have acquired beneficial ownership of all shares of the issuer owned by any member of the group.  Upon information and belief, Deutsche Balaton, Zours, DELPHI, ABC, and VVB acted as a group for the purpose of acquiring or holding shares of Biofrontera and should have timely filed with the U.S. Securities and Exchange Commission ("SEC") an accurate beneficial ownership report on a Schedule 13D.

7.     Zours, DELPHI and Deutsche Balaton each have a beneficial ownership of greater than 5% of Biofrontera's shares, and Zours, DELPHI and Deutsche Balaton together have increased the percentage of Biofrontera's shares over which they exercise voting power by more than 5% of Biofrontera's total outstanding shares since the completion of Biofrontera's U.S. IPO and registration of Biofrontera's shares under Section 12 of the 34 Act.  This makes Zours and Deutsche Balaton subject to Section 13(d)(1) of the 34 Act and SEC Regulation 13D-G.  Pursuant to Section 13(d)(1) and the SEC's Rule 13d-1(a), Zours and Deutsche Balaton were required to file an accurate beneficial ownership report on Schedule 13D with the SEC within 10 days after acquiring at least 2% of Biofrontera's shares following registration of Biofrontera's shares under Section 12 of the 34 Act, but to date have not done so.

8.     Further, Zours, Deutsche Balaton, DELPHI, ABC, and VVB, despite acquiring or holding Biofrontera's shares with a purpose or effect of changing or influencing control of Biofrontera, did not file a beneficial ownership report on Schedule 13D (or amendment thereto) with the SEC until June 11, 2018, despite the fact that they were required to do well prior to that

date, and within 10 days after acquiring at least 2% of Biofrontera's shares following registration of Biofrontera's shares under Section 12 of the 34 Act.  Their delay, and the continued inaccuracies in their Schedule 13D amendments detailed by Biofrontera herein, deceived U.S. investors by not providing them with information regarding the group's holdings and their purpose or effect of changing or influencing control of Biofrontera.

9.     Deutsche Balaton's illegal conduct continued on May 28, 2018.  Specifically, Deutsche Balaton directed its wholly-owned subsidiary DB Biotech to publicly announce and launch another tender offer that all holders of ADSs in the United States were able to access, receive, review and participate in (the "2018 Tender Offer").  As part of the 2018 Tender Offer, DB Biotech offered to purchase up to 6,250,000 Biofrontera shares in exchange for per-share consideration consisting of one euro plus an option entitling the holder thereof to purchase a Biofrontera share for the price of one euro.  The option offered by DB Biotech was a complex security that, combined with the one euro consideration, had the effect of separating the voting power of tendered Biofrontera shares from exposure to the economic value of those shares.  Upon information and belief, the offer documents were drafted to allow for participation by U.S. investors because under German law, all of Biofrontera's shareholders, wherever located, must be permitted to participate in the offer.  U.S. ADSs holders could participate in the offer simply by exchanging their ADSs for Biofrontera's ordinary shares pursuant to Biofrontera's Deposit Agreement with The Bank of New York.  The offer was published on Deutsche Balaton's website, and Deutsche Balaton took no measures to prevent U.S. investors from accessing the offer documents.

10.     In addition, NASDAQ rules require Biofrontera to disclose promptly to the U.S. market the receipt of any tender offer for its listed shares; NASDAQ's preferred method for this

disclosure is a press release.  Biofrontera disclosed the receipt of the 2018 Tender Offer via a press release, as required.  Upon information and belief, as a sophisticated investor, Zours knew of these publicity requirements, and used them to force Biofrontera to indirectly publicize the existence of the 2018 Tender Offer in the United States.

11.     Pursuant to Section 5 of the U.S. Securities Act of 1933, as amended (the "33 Act"), unless a registration statement is in effect as to a security, it is unlawful for any person, directly or indirectly, to make use of any means or instruments of interstate commerce in order to sell or offer for sale such security.  The 2018 Tender Offer constituted a public offering of the options forming part of the tender offer consideration in the U.S., as U.S. ADS holders could participate by exchanging ADSs for Biofrontera's ordinary shares, and DB Biotech took no action to register the options forming part of the 2018 Tender Offer consideration with the SEC.  When deciding whether to exchange their Biofrontera shares for the complex option issued by DB Biotech, U.S. investors should have had the benefit of complete disclosures required to be included in a registration statement under the 33 Act and related SEC rules.

12.     U.S. investors should have had this benefit because they were targeted by Defendants for participation in the 2018 Tender Offer.  In July 2018 Biofrontera learned that Defendants were actively soliciting a fund manager employed by an institutional investor based in New York that owned a significant number of Biofrontera ADSs (the "U.S. Fund"), promoting and encouraging the U.S. Fund to participate in the 2018 Tender Offer by selling the U.S. Fund's Biofrontera ADSs.  In September 2018, an employee from that the U.S. Fund confirmed that Defendants had contacted the U.S. Fund to promote and encourage its participation in the 2018 Tender Offer by selling its block of ADSs to Defendants.

13.     Moreover, no exemption from the registration requirements of Section 5 of the 33 Act was available to DB Biotech in connection with the 2018 Tender Offer because (a) DB Biotech was required under German law to accept tenders from all holders of its shares, including holders of ADSs who exchanged their ADSs for shares in order to tender them, wherever they are located and regardless of whether they qualify as "accredited investors" as defined under applicable SEC rules and regulations and (b) DB Biotech took no measures to prevent U.S. investors from accessing the offer materials available on Deutsche Balaton's website even though it is a wholly-owned subsidiary of Deutsche Balaton which knew, or as a sophisticated investor should have known, that Biofrontera had to publicize the receipt of the 2018 Tender Offer in the U.S.

14.     Because DB Biotech did not register the options comprising part of the tender offer consideration and because no exemption from registration was available, the 2018 Tender Offer violated Section 5 of the 33 Act.

15.     On the same day as the 2018 Tender Offer, Deutsche Balaton and Zours launched another defamatory attack on Biofrontera.  Deutsche Balaton and Zours published an open letter to Biofrontera supervisory board member John Borer on Deutsche Balaton's website that was accessible to all, including U.S. holders of Biofrontera's ADS.  That letter contained a number of false and misleading statements regarding Mr. Borer, Biofrontera's chief executive officer Dr. Hermann Lübbert, and Biofrontera's chief financial officer Thomas Schaffer, including claims that the U.S. IPO was unlawfully conducted.

16.     On May 29, 2019, DB Biotech and DELPHI announced another tender offer for shares of Biofrontera (the "2019 Tender Offer").  In connection with the 2019 Tender Offer Defendants actively solicited investors in the U.S. and made purchases outside of the announced tender offer in violation, and without complying with the requirements, of Section 14 of the 34

Act and related rules and regulations, despite the disclosures to the contrary in their Schedule 13D amendments filed with the SEC claiming that no such solicitation or tender offer was being made by the Defendants or their agents or affiliates in the United States.  Indeed, on June 13, 2019, Biofrontera learned that the U.S Fund that the Defendants had previously contacted with respect to the 2018 Tender Offer was again being aggressively pushed by the Defendants to sell its Biofrontera shares to them during the 2019 Tender Offer.

## JURISDICTION AND VENUE

17.     This action arises under Section 13(d) of the 34 Act (15 U.S.C. § 78m(d)), Section 14(e) of the 34 Act (15 U.S.C. § 78n(e)), Section 20(a) of the 34 Act (15 U.S.C. § 78t(a)), and the rules and regulations promulgated thereunder.

18.     Jurisdiction over the subject matter of this action is based upon 28 U.S.C. § 1331 and Section 27 of the 34 Act (15 U.S.C. § 78aa).  Jurisdiction of the subject matter state law claims (Counts I – III), is based upon 28 U.S.C. § 1367.

19.     Personal jurisdiction over Defendants for Biofrontera's 34 Act claims (Counts IV, V, VI, and VII) is based on 15 U.S.C. § 78aa.  Personal jurisdiction over Deutsche Balaton and Zours for Biofrontera's state law claims (Counts I – III) is based on pendant personal jurisdiction because Biofrontera's state law claims derive from the same common nucleus of operative facts as Biofrontera's 34 Act claims.  Further, this Court has personal jurisdiction over all Defendants because each of the Defendants directed the conduct described in this Complaint towards the United States (the forum state), impacting the value of the ADSs, which trade on NASDAQ, and because Deutsche Balaton indirectly owns a controlling share of Beta Systems Software of North America, Incorporated, a McLean, Virginia-based corporation.  In fact, Deutsche Balaton's latest 13D amendments expressly declare and admit that the 2019 Tender Offer is directed at U.S. investors, publicly confirming the solicitation of U.S. investors that Defendants have engaged in

since the 2018 Tender Offer was initiated, and further conferring jurisdiction on this court. Jurisdictional discovery in this action shall reveal additional information regarding Defendants' jurisdictional actions.

20.    Venue in this district is proper pursuant to Section 27 of the 34 Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(d).

21.    Declaratory relief is appropriate pursuant to 28 U.S.C. § 2201 because an actual controversy exists regarding the propriety of Defendants' actions and their failure to make required disclosures under Section 13(d) of the 34 Act, their violation of SEC Rule 14e-5(a) by purchasing Biofrontera shares during the tender offers, and their violation of Section 14(e) of the 34 Act by making untrue and misleading statements of material fact and employing fraudulent, deceptive, and manipulatives acts and practices in connection with the tender offers.

## THE PARTIES

22.    Plaintiff Biofrontera AG is a German stock corporation with headquarters in Leverkusen, Germany.  The U.S. headquarters of its wholly-owned U.S. subsidiary, Biofrontera Inc., is in Wakefield, Massachusetts.  Biofrontera AG is an international biopharmaceutical company specializing in the development and commercialization of pharmaceutical products for the treatment of dermatological conditions and diseases caused primarily by exposure to sunlight. Biofrontera's approved products focus on the treatment in the U.S. and Europe of actinic keratoses, which are skin lesions that can sometimes lead to skin cancer, as well as the treatment of certain forms of basal cell carcinoma in the European Union.  A majority of the revenue of Biofrontera and its subsidiaries is derived from the U.S. business and operations and the percentage of revenue generated in the U.S. is expected to grow.  On February 14, 2018, Biofrontera completed its U.S. initial public offering of ADSs, which trade on The NASDAQ Capital Market.

23.     Defendant Zours, directly or indirectly, controls Defendants DELPHI, VVB, Deutsche Balaton, ABC, and DB Biotech.  Zours owns greater than 50% of the shares of Defendant DELPHI, a corporation based in Heidelberg, Germany.  DELPHI owns greater than 50% of the shares of Defendant VVB, a corporation based in Heidelberg, Germany.  VVB owns greater than 50% of the shares of Defendant Deutsche Balaton, an investment fund based in Heidelberg, Germany.  Deutsche Balaton owns 100% of both Defendant DB Biotech and Defendant ABC, corporations based in Heidelberg, Germany.  According to recent public filings made by Deutsche Balaton, Zours beneficially owns 27.8% of Biofrontera's shares, including 3.0% beneficially owned by Deutsche Balaton, 14.4% beneficially owned by DELPHI, 0.2% beneficially owned by ABC, and 2.7% beneficially owned by DB Biotech.

24.     Deutsche Balaton owns 53% of Beta Systems Software AG based in Berlin, Germany.  Beta Systems Software AG owns 100% of Beta Systems Software of North America, Inc. based in McLean, Virginia.

## FACTS

### Zours and Deutsche Balaton's Unlawful Efforts to Control Biofrontera Through Defamation of its Directors and Officers

25.     Zours and Deutsche Balaton have long been interested in investing in Biofrontera based on the company's value and potential for growth.  However, Zours and Deutsche Balaton have repeatedly attempted to control Biofrontera without obtaining a controlling stake in the company.  Thus, Zours and Deutsche Balaton have begun and continue a campaign to injure Biofrontera and its officers, directors and other stakeholders without actually obtaining control.

26.     In February 2018, Biofrontera participated in an extensive road show throughout the U.S., in which Biofrontera representatives met with potential investors.  This was a critical

period in the U.S. IPO process, as the number and level of interest of potential purchasers would directly correlate with the U.S. IPO price.

27.     It was precisely because of the importance of the U.S. road show that Deutsche Balaton and Zours launched their defamatory and illegal attack during the road show.  Specifically, on February 6, 2018, Zours and Deutsche Balaton published a letter on Deutsche Balaton's website that was accessible to all, including potential investors in the U.S. IPO, that contained a number of false and misleading statements, including but not limited to the following:

- Biofrontera's decision to allow the setting of the U.S. IPO subscription price to take place on Friday, February 9, 2018 was "contrary to the law and unethical",

- Biofrontera's chief financial officer Thomas Schaffer "misled the shareholders at the 2017 Shareholder's General Meeting" concerning the terms of a company loan, that Mr. Schaffer's actions were unethical and contrary to law," and that he is unable to serve as chief financial officer,

- Biofrontera "deceitfully" withheld confirmation about a research partnership with Maruho,

- Biofrontera's chief executive officer Dr. Hermann Lübbert provided "internal company information" to Maruho and thus is "liable to prosecution".

28.     These statements were published on the Internet and accessible by prospective purchasers of Biofrontera's ADS in the U.S. IPO during the U.S. road show in February 2018. These statements are all false and misleading and were published by Zours and Deutsche Balaton with negligence and/or actual malice.

29.     Deutsche Balaton and Zours launched another defamatory attack on Biofrontera on May 28, 2018.  On Deutsche Balaton's website, Deutsche Balaton and Zours published an open letter to Biofrontera supervisory board member John Borer accessible to U.S. holders of Biofrontera's ADS.  The letter contained a number of false and misleading statements regarding Biofrontera, Mr. Borer, Mr. Schaffer, and Dr. Lübbert, including but not limited to the following:

- The bookbuilding process in the U.S. was "only a fake bookbuilding"

- The U.S. IPO involved an "unlawful share placement at a 30% discount to market price."

- In the U.S. IPO, Dr. Lübbert did "not accept[] higher bids for shares than 4 Euro to stop . . . egoistic shareholders from taking advantage of the company and the other Biofrontera shareholders."

30.    These statements were published on the Internet and accessible by all U.S. holders of Biofrontera's ADS.  These statements are false and misleading and were published by Deutsche Balaton and Zours with negligence and/or actual malice.

**Deutsche Balaton Engaged in a Continuing Violation of Section 13(d) by Failing to Reveal its Ownership Interest in Biofrontera in a Schedule 13D Filing**

31.    Section 13(d)(1) of the 34 Act mandates that any person who after acquiring directly or indirectly the beneficial ownership of more than 5% of a class of equity securities of an issuing corporation when such class has been registered under Section 12 of the 34 Act, within 10 days after such acquisition, must file with the SEC a beneficial ownership report on Schedule 13D and send the statement to the issuer.  For approximately one month, both Zours and Deutsche Balaton failed to so file or send the required Schedule 13D, only doing so on June 11, 2018, the same date that Biofrontera filed its original Complaint in this action, which confirmed their willful violation of Section 13(d).

32.    Section 13(d)(6)(B) of the 34 Act provides that shareholders who beneficially own 5% or more of a class of shares at the time such class becomes subject to Section 13(d)(1) need not comply with Section 13(d)(1) until such shareholders purchase more than 2% of such class of shares in a given 12-month period.  Because both Zours and Deutsche Balaton acquired beneficial ownership of more than 2% of Biofrontera's shares since Biofrontera completed its U.S. IPO, they were not permitted to take advantage of the Section 13(d)(6)(B) exemption.

33.    Among the information that must be provided on Schedule 13D is:

"(B)    the source and amount of the funds or other consideration used or to be used in making the purchases, and if any part of the

purchase price is represented or is to be represented by funds or other consideration borrowed or otherwise obtained for the purpose of acquiring, holding, or trading such security, a description of the transaction and the names of the parties thereto ...;"

"(C)     if the purpose of the purchases or prospective purchases is to acquire control of the business of the issuer of the securities, any plans or proposals: which such persons may have to liquidate such issuer, to sell its assets to or merge it with any other persons, or to make any other major change in its business or corporate structure;"

"(D)     the number of shares of such security which are beneficially owned, and the number of shares concerning which there is a right to acquire, directly or indirectly, by (i) such person, and (ii) by each associate of such person, giving the background, identity, residence, and citizenship of each such associate;" and

"(E)     information as to any contracts, arrangements, or understandings with any person with respect to any securities of the issuer, including but not limited to transfer of any of the securities, joint ventures, loan or option arrangements, puts or calls, guaranties of loans, guaranties against loss or guaranties of profits, division of losses or profits, or the giving or withholding of proxies, naming the persons with whom such contracts, arrangements, or understandings have been entered into, and giving the details thereof."

34.     When two or more persons act as a group "for the purpose of acquiring, holding, or disposing of securities of an issuer," the group is deemed to be a person under Section 13(d)(3) of the 34 Act.  Each member of the group is deemed to have acquired beneficial ownership of all shares of the issuer owned by any member of the group.  Upon information and belief, Deutsche Balaton, Zours, DELPHI, ABC, and VVB acted as a group for the purpose of acquiring, holding, and/or voting shares of Biofrontera.  In February 2016, Deutsche Balaton and Biofrontera negotiated that Deutsche Balaton would purchase a total of approximately 2.4 million shares of Biofrontera, excluding the shareholders' subscription rights.  Deutsche Balaton announced shortly before the sale that it intended to distribute the shares among its various acquisition vehicles. Deutsche Balaton acquired one million shares of Biofrontera, and DELPHI acquired the remainder of the purchased shares.   Because Defendants have acted as a group for the purpose of acquiring,

holding, and/or voting securities of Biofrontera, they as a group are deemed a "person" under Section 13(d).

35.     As a result of the U.S. IPO and on a continuing basis thereafter, the group comprising Deutsche Balaton, Zours, DELPHI, ABC, and VVB has beneficially owned more than 5% of the outstanding shares of Biofrontera.  Nevertheless, Deutsche Balaton, Zours, DELPHI, ABC, and VVB, failed to timely file a beneficial ownership report on Schedule 13D, despite being informed of their obligation by Biofrontera in correspondence dated March 14, 2018 and despite, upon information and belief, acting as a group to acquire, hold, and/or vote Biofrontera's shares for the purpose or effect of changing or influencing control of Biofrontera.  Defendants did not file a Schedule 13D until June 11, 2018, the same day the original Complaint in this action was filed. The inaccurate, belated beneficial ownership report on Schedule 13D filed in June and the subsequently amended, but consistently inaccurate and misleading, Schedule 13D amendments confirm that Defendants' tender offers and purchases of Biofrontera shares are subject to U.S. securities laws designed to protect investors and maintain the integrity of U.S. markets.

36.     Even if Defendants did not acquire or hold Biofrontera's shares with the purpose or intent of changing or influencing control of Biofrontera at the time of the U.S. IPO, they would have been required to file an acccurate Schedule 13D within 10 days after they acquired beneficial ownership of an additional 2% or more of Biofrontera's shares following completion of Biofrontera's U.S. IPO.  Because they did not do so, they violated Section 13(d) of the 34 Act. The belatedly filed Schedule 13D and Schedule 13D amendments further contain material misstatements and inaccuracies that have yet to be corrected.  For example, none of the Schedule 13D amendments filed before June 13, 2019 disclose or admit that the tender offers were directed at U.S. investors nor do they disclose or admit that Defendants were soliciting or purchasing

Biofrontera ADSs, or soliciting Biofrontera ADSs so that the shares issuable upon exchange could be purchased by Defendants.  And as described in further detail below, Defendants' most recent Schedule 13D filings with the SEC falsely state that the 2019 Tender Offer was made in accordance with Rule 14d-1(c)'s Tier I exemption.

### Deutsche Balaton's Tender Offers Violate Section 5 of the 33 Act and Rules 14d-1 and 14e-5 of the 34 Act

37.    Deutsche Balaton continued its illegal conduct by launching the illegal 2018 Tender Offer on May 28, 2018.  Specifically, Deutsche Balaton directed DB Biotech to publicly announce and launch a tender offer for Biofrontera's shares.  DB Biotech made the offer documents available on Deutsche Balaton's website.  All holders of ADSs in the United States were able to access, receive, review, and participate in the 2018 Tender Offer.  As part of the public offer, DB Biotech offered to purchase up to 6,250,000 Biofrontera shares in exchange for per-share consideration consisting of one euro plus an option entitling the holder thereof to purchase a Biofrontera share for the price of one euro.  The option offered by DB Biotech was a complex security that, combined with the one euro consideration, had the effect of separating the voting power of tendered Biofrontera shares from exposure to the economic value of those shares.

38.    Upon information and belief, the offer documents were drafted to allow for participation by U.S. investors.  DB Biotech took no measures to prevent U.S. investors from being able to access the offer documents, which were published on Deutsche Balaton's website.  Moreover, under German law, all of Biofrontera's shareholders, wherever located, must be permitted to participate in the offer.

39.    In addition, NASDAQ rules require Biofrontera to disclose promptly to the U.S. market the receipt of any tender offer for its listed shares; NASDAQ's preferred method for this disclosure is a press release.  Biofrontera disclosed the receipt of the 2018 Tender Offer via a press

release, as required.  Upon information and belief, as a sophisticated institutional investor, Zours knew of these publicity requirements, and used them to force Biofrontera to indirectly publicize the existence of the 2018 Tender Offer in the United States.

40.     Under Section 5 of the 33 Act, unless a registration statement is in effect as to a security or an exemption is available, it is unlawful for any person, directly or indirectly, to make use of any means or instruments of interstate commerce in order to sell or offer for sale such security.  Investors in the U.S. should not have been called upon to make a decision to exchange their Biofrontera shares for the complex option publicly offered by DB Biotech without the benefit of complete disclosures that would be required to be included in a registration statement under the 33 Act and related SEC rules.

41.     Although DB Biotech's tender offer constituted a public offering of the options forming part of the 2018 Tender Offer consideration in the U.S., DB Biotech took no action to register such options with the SEC.

42.     No exemption from Section 5's registration requirements was available to DB Biotech in connection with the 2018 Tender Offer because: (a) DB Biotech was required under German law to accept tender from all holders of its shares, including holders of ADSs, wherever they were located and regardless of whether they qualified as "accredited investors" as defined under applicable SEC rules and regulations; and (b) DB Biotech took no measures to prevent U.S. investors, including non-accredited investors, from accessing the offer materials available on its website.

43.     Because DB Biotech did not register with the SEC the options comprising part of the tender offer consideration and because no exemption from registration was available, the 2018 Tender Offer violated Section 5 of the 33 Act.

44.     In addition, upon information and belief, Deutsche Balaton and Zours each purchased additional shares of Biofrontera after public announcements by Deutsche Balaton and DB Biotech of their tender offers, which is in direct violation of Rule 14e-5 of the 34 Act, which states ". . . no covered person may directly or indirectly purchase or arrange to purchase any subject securities or any related securities except as part of the tender offer."  Deutsche Balaton and Zours are clearly in violation of Rule 14e-5 as they are covered persons under the definition.

45.     On May 29, 2019, DB Biotech and DELPHI announced the 2019 Tender Offer. The 2019 Tender Offer was initially announced to U.S. investors in a materially false and misleading Schedule 13D amendment filed with the SEC on June 7, 2019, which asserted "The [2019 Tender Offer] . . . will relate to Ordinary Shares only; ADSs will not be able to be tendered. The tender offer materials will be available in the German language and . . . [n]o tender offer materials will be distributed, nor will any disclosure of the tender offer be made by DBB or its agents or affiliates, in the United States."  Just a few days later, on June 13, 2019, Defendants filed another Schedule 13D amendment with the SEC admitting the very behavior that Biofrontera alleged in its original Complaint and reasserts in this Amended Complaint:  Defendants have been, and continue to, actively solicit and engage U.S. investors, in direct contrast to their statements on June 7, 2019 that they would not solicit U.S. investors.  *See* June 13, 2019 Schedule 13D amendment filed by Defendants with the SEC (disclosing that "[i]t is expected that the [2019 Tender Offer] will be made to U.S. shareholders of the Issuer [Biofrontera] (with respect to Ordinary Shares only and not ADSs) in accordance with the 'Tier I' exemption provided for in Rule 14d-1(c) under the [Exchange] Act, and other applicable provisions of U.S. law"); *see also* June 25, 2019 Schedule 13D amendment filed by Defendants with the SEC (disclosing that "[t]he 2019 tender offer is being made to U.S. shareholders of the Issuer (with respect to Ordinary Shares

only and not ADSs) in accordance with the 'Tier I' exemption provided for in Rule 14d-1(c) under the [Exchange] Act, and other applicable provisions of U.S. law" and that "[p]ursuant to such exemption, an English language translation of the offering materials has been made available and furnished to the Securities and Exchange Commission under cover of Form CB").

46.     Despite belatedly representing to the SEC and U.S. investors that the 2019 Tender Offer was made "in accordance with" the "Tier I" exemption provided for in Rule 14d-1(c) of the 34 Act, Defendants' own public filings make clear that they in fact failed to comply with the requirements of this exemption and therefore continue to act in violation of U.S. tender offer rules.

47.     Rule 14d-1(c)(3) states that in order to rely on the Tier I exemption, foreign tender offerors such as Defendants "must furnish" certain informational documents to the SEC on Form CB "by the first business day after publication or dissemination" of the tender offer in the home jurisdiction.

48.     Defendants' Form CB in connection with the 2019 Tender Offer was not filed with the SEC until June 24, 2019, almost a full month after Defendants' published their tender offer announcement in Germany on May 29, 2019.  This is far beyond the "first business day" after Defendants' publication of the announcement of the 2019 Tender Offer, when the Form CB was required to be filed, and is a clear violation of Rule 14d-1 that precludes application of the Tier I exemption.  Defendants' Form CB also lists several additional important tender offer documents that were published and provided to shareholders in Germany, but were not furnished on Form CB until well after the deadline of the "first business day" after publication.

49.     As a result, Defendants cannot rely on the Tier I exemption, meaning that their solicitations of U.S. investors and purchases of U.S. investors' Biofrontera shares continue to

violate U.S. securities laws, and the belated attempt to sanctify Defendants' improper solicitation via the Tier I exemption fails as well.

50.     On July 1, 2019, Defendants increased the price for the 2019 Tender Offer shares.

**Deutsche Balaton Made Its False, Misleading, and Defamatory Statements Regarding Biofrontera in Connection with Its Tender Offers in Violation of Section 14(e) of the 34 Act**

51.     Section 14(e) of the 34 Act makes it unlawful to make any untrue or misleading statement of material fact or to engage in any fraudulent, deceptive or manipulative acts or practices in connection with any tender offer.  By publishing their false and defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions, Deutsche Balaton and Zours made misleading and untrue statements of material fact and engaged in deceptive and manipulative acts and practices in connection with the tender offers.

52.     Deutsche Balaton and Zours knowingly or recklessly made false and misleading defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions in connection with DB Biotech's 2018 Tender Offer.  Deutsche Balaton and Zours' statements were material because reasonable Biofrontera investors, in deciding whether to purchase, hold, tender, or sell Biofrontera shares, would have considered it important whether Biofrontera's officers and directors are competent and running Biofrontera in compliance with relevant laws and regulations and whether the statements were made as part of an attempt by Deutsche Balaton and Zours to seize control of Biofrontera.

53.     These false and misleading defamatory statements were also deceptive and manipulative acts made in connection with the 2018 Tender Offer.  Deutsche Balaton and Zours' statements were deceptive because they defame the competency of Biofrontera and its officers and directors, without disclosing that the intent of Deutsche Balaton and Zours in making those statements was to make DB Biotech's tender offer more appealing as an alternative to maintaining

the current management of Biofrontera.   Deutsche Balaton and Zours' statements were manipulative because they, upon information and belief, negatively impacted Biofrontera's share price during the 2018 Tender Offer period, thereby making DB Biotech's tender offer more appealing, and the price that DB Biotech must pay for Biofrontera's shares less than it otherwise would have been required to pay in the tender offer.

54.     Defendants' initial beneficial ownership report on Schedule 13D and each of their Schedule 13D amendments filed with the SEC prior to June 13, 2019 similarly contain false and misleading statements about their non-solicitation of U.S. investors, because Defendants were in fact actively soliciting U.S. investors, a clear attempt to manipulate the market.   For example, upon information and belief, Deutsche Balaton was purchasing Biofrontera's ADSs on The NASDAQ Capital Market (and/or the Biofrontera ordinary shares into which they are exchangeable) after their announced 2019 Tender Offer—but outside of the tender offer and without complying with U.S. tender offer rules—as recently as June 11, 2019, while the Schedule 13D amendments filed before June 13, 2019 stated that they were not soliciting U.S investors.

55.     During that same pre-June 13, 2019 period, Deutsche Balaton was actively soliciting U.S. investors.   On June 13, 2019, Biofrontera learned that Defendants had contacted the U.S. Fund multiple times in an effort to entice it to sell its shares of Biofrontera to Defendants in connection with the 2019 Tender Offer.   And yet, Defendants' June 7, 2019 Schedule 13D amendment filed with the SEC states:   "The [May 2019] joint tender offer will relate to Ordinary Shares only; ADSs will not be able to be tendered. The tender offer materials will be available in the German language and . . . [n]o tender offer materials will be distributed, nor will any disclosure of the tender offer be made by DBB or its agents or affiliates, in the United States."

56.     On June 13, 2019, however, Defendants filed another Schedule 13D amendment with the SEC that admitted and revealed their previously concealed true objective:  Defendants intended to target, and actively solicit, U.S. investors from the start of their tender offers. Defendants disclosed in their June 13, 2019 Schedule 13D amendment filed with the SEC that the 2019 Tender Offer was "expected" to be made in accordance with Rule 14d-1's "Tier I" exemption.  In their June 25, 2019 Schedule 13D amendment, Defendants then admitted:  "The 2019 tender offer is being made to U.S. shareholders of the Issuer (with respect to Ordinary Shares only and not ADSs) in accordance with the "Tier I" exemption provided for in Rule 14d-1(c) under the Act, and other applicable provisions of U.S. law.  Pursuant to such exemption, an English language translation of the offering materials has been made available and furnished to the Securities and Exchange Commission under cover of Form CB."  These belated disclosures, coupled with Defendants' actual solicitation of U.S. investors before the June 13, 2019 correction (which still remained inaccurate), demonstrate that their prior Schedule 13D amendments filed with the SEC contained false and misleading statements that constitute a violation of Section 14(e) of the 34 Act—namely that the tender offers would not touch the U.S. and that no U.S. shareholders of Biofrontera (such as the U.S. Fund) would be solicited.

57.     Defendants' assertion in their latest Schedule 13D amendments that the 2019 Tender Offer is being made in accordance with Rule 14d-1(c)'s Tier I exemption is yet another false and misleading statement made to the SEC and U.S. investing public.  Defendants' own filings make clear that they have failed to comply with the requirements of the Tier I exemption because they delayed—a continued theme of their securities filings which allows them to act before U.S. investors have full information—in filing their Form CB until June 24, 2019, well after the

2019 Tender Offer was announced on May 29, 2019 and in violation of the tender offer rules and exemptions.

### Count I – Libel
### (Against Deutsche Balaton and Zours)

58.     Biofrontera repeats and realleges Paragraphs 1 – 57 as if fully set forth herein.

59.     Zours and Deutsche Balaton's February 6, 2018 and May 28, 2018 publicly issued letters contain multiple written defamatory statements concerning Biofrontera which were available to all on the Internet, including prospective investors in Biofrontera's shares by virtue of being published on Deutsche Balaton's website.

60.     The statements made in these publicly issued letters were false and misleading and, upon information and belief, Zours and Deutsche Balaton acted negligently and/or with actual knowledge or with reckless disregard to the falsity of such statements.

61.     The statements caused economic harm to Biofrontera by interfering with and obstructing its U.S. IPO and by diverting management's attention from its business and operations, and causing unnecessary legal and administrative costs and expenses and, in any event, are per se actionable because they tend to disparage Biofrontera and its officers and directors in their respective office or profession and impugn the basic integrity and competence of Biofrontera and its officers and directors.

### Count II – Trade Libel
### (Against Deutsche Balaton and Zours)

62.     Biofrontera repeats and realleges Paragraphs 1 – 61 as if fully set forth herein.

63.     By publicly issuing the February 6, 2018 and May 28, 2018 letters, Zours and Deutsche Balaton knowingly published false and derogatory facts about Biofrontera's business that, based on their timing and content, were calculated to try to prevent prospective investors from properly assessing Biofrontera and its business during the U.S. road show and U.S. IPO.  Zours

and Deutsche Balaton's false and misleading defamatory statements caused injuries to Biofrontera's prospective business opportunities because those statements negatively impacted Biofrontera's reputation as a responsible and well-run company.

### Count III – Tortious Interference with Prospective Business Opportunity
### (Against Deutsche Balaton and Zours)

64.     Biofrontera repeats and realleges Paragraphs 1 – 63 as if fully set forth hereby.

65.     Zours and Deutsche Balaton knew that in February 2018, Biofrontera was conducting a U.S. road show and soliciting prospective investors in the U.S. to support its U.S. IPO.  Zours and Deutsche Balaton intentionally interfered with Biofrontera's relationship with existing and potential investors and others with whom they do business by publishing the false and misleading and defamatory statements on Deutsche Balaton's website in their February 6, 2018 and May 28, 2018 letters.

66.     Zours and Deutsche Balaton acted out of malice in so doing and used dishonest and unfair means to disrupt the relationship between Biofrontera and its existing and potential investors and others with whom they do business.

67.     Zours and Deutsche Balaton's false and misleading defamatory statements caused injuries to Biofrontera's prospective business opportunities because those statements negatively impacted Biofrontera's reputation as a responsible and well-run company.

### Count IV – Violation of Section 13(d) of the 34 Act and
### SEC Rules Promulgated Thereunder
### (Against all Defendants)

68.     Biofrontera repeats and realleges paragraphs 1 – 67 as if fully set forth herein.

69.     By virtue of their beneficial ownership of more than 5% of Biofrontera's shares and their acquisition since the U.S. IPO of beneficial ownership of an additional 2% or more of Biofrontera's shares, Zours and Deutsche Balaton were required to file with the SEC an accurate

beneficial ownership report on Schedule 13D with the SEC within 10 days of such acquisition, and willfully failed to do so, notwithstanding their notice thereof.

70.     Zours, DELPHI, ABC, VVB and Deutsche Balaton together held beneficial ownership of more than 5% of Biofrontera's shares for a purpose or effect of changing or influencing control of Biofrontera.  As a result, Zours, DELPHI, ABC, VVB, and Deutsche Balaton, were required to file a beneficial ownership report on Schedule 13D with the SEC within 10 days after they acquired 2% of the shares of Biofrontera after the U.S. IPO.  Defendants did not do so.  Zours, DELPHI, ABC, VVB, and Deutsche Balaton, filed with the SEC a belated and inaccurate beneficial ownership report on Schedule 13D on June 11, 2018, the same day the original Complaint was filed in this action.  Defendants then filed a subsequent and equally inaccurate amended beneficial ownership report on Schedule 13D on September 19, 2018.  The recent Schedule 13D amendments continue to contain inaccuracies regarding the solicitation of U.S. investors, the purchases of Biofrontera ADSs and shares, and the applicability of the 2018 Tender Offer to holders of Biofrontera ADSs, who could have participated in the 2018 Tender Offer by exchanging their Biofrontera ADSs for ordinary shares.

71.     Zours, Deutsche Balaton, DELPHI, ABC, and VVB, are obligated to correct their violations of law by immediately filing with the SEC an accurate beneficial ownership report on Schedule 13D.  Further, in order to prevent Zours, DELPHI, Deutsche Balaton, ABC, and VVB from benefitting from their violation of Section 13(d) of the 34 Act, the Court should enter an order barring Defendants and their affiliates from voting any of the shares controlled or beneficially owned by them, whether directly or indirectly, acquiring any shares, or taking other steps to acquire any shares or otherwise change or influence control of Biofrontera, until an accurate Schedule 13D is filed with the SEC and a further six months have elapsed.  Absent such

relief, Defendants and their affiliates could join with other shareholders to attempt to take over, change, or influence control of Biofrontera, change management or take other actions after actively concealing information required to be disclosed to the public under Section 13(d) of the 34 Act. Section 13(d) entitles the Biofrontera shareholders and other investors and potential investors to complete and accurate information before acquiring, selling, casting a vote or otherwise making investment decisions with respect to its shares, and sufficient time for Biofrontera to review, and respond to any such Schedule 13D filing.  There is no adequate remedy at law.

### Count V – Violation of Section 14(e) of the 34 Act and SEC Rule 14e-5 (Against Deutsche Balaton and Zours)

72.    Biofrontera repeats and realleges Paragraph 1 – 71 as if fully set forth herein.

73.    SEC Rule 14e-5(a) of the 34 Act, promulgated under Section 14(e) of the 34 Act, makes it unlawful for covered persons "to directly or indirectly purchase or arrange to purchase any subject securities or any related securities except as part of the tender offer." The "prohibition applies from the time of public announcement of the tender offer until the tender offer expires." 17 C.F.R. § 140.14e-5(a).  A "covered person" includes the tender offeror, its control persons, and any person acting, directly or indirectly, in concert with the offeror or its affiliates.  17 C.F.R. §§ 240.12b-2, 240.14e-5(c)(3).

74.    Upon information and belief, Deutsche Balaton and Zours each purchased additional shares of Biofrontera after public announcements by Deutsche Balaton and DB Biotech of their tender offers for Biofrontera's shares and before the expiration of the 2018 Tender Offer and the 2019 Tender Offer.  Deutsche Balaton and Zours are covered persons under Rule 14e-5(a) as control persons of offeror DB Biotech, and as a result their share purchases during the period of each of the tender offers violated Rule 14e-5.

24

75.     As a result, Deutsche Balaton and Zours violated Rule 14e-5(a).  This Court should enjoin Deutsche Balaton and Zours and their affiliates from purchasing any additional Biofrontera shares or voting any shares that they purchased during the tender offers for a period of six months to prevent them from benefitting from their violation of Rule 14e-5(a).  There is no adequate remedy at law.

### Count VI – Violation of Section 14(e) of the 34 Act
### (Against all Defendants)

76.     Biofrontera repeats and realleges Paragraph 1 – 75 as if fully set forth herein.

77.     Section 14(e) of the 34 Act makes it "unlawful for any person to make any untrue statement of a material fact or omit to state any material fact necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading or to engage in any fraudulent, deceptive, or manipulative acts or practices, in connection with any tender offer."

78.     By publishing their false and defamatory statements regarding the competency of Biofrontera and its officers and directors and the legality of their actions, Deutsche Balaton and Zours made misleading and untrue statements of material fact and engaged in deceptive and manipulative acts and practices in connection with the tender offer by DB Biotech.

79.     By making false and misleading statements in their Schedule 13D amendments filed with the SEC, Defendants further engaged in deceptive and manipulative acts and practices by claiming that the 2018 Tender Offer and the 2019 Tender Offer would not touch the U.S. and that no U.S. shareholders of Biofrontera would be solicited, when in fact Defendants solicited U.S. shareholders in connection with both the 2018 Tender Offer and the 2019 Tender Offer and acquired shares as a result of such solicitation, prior to the belated June 13, 2019 disclosure that

Defendants would seek a "Tier I" exemption under Rule 14d-1(c) of the 34 Act with respect to the 2019 Tender Offer.

80.     The belated filing of Defendants' Form CB in connection with the 2019 Tender Offer further demonstrates that they continue to violate Section 14(e), as their recent Schedule 13D amendments filed with the SEC falsely state that the 2019 Tender Offer was made in accordance with the Tier I exemption of Rule 14d-1(c).  Because they did not comply with Rule 14d-1(c), Defendants cannot rely on the Tier I exemption and as a result cannot solicit or purchase Biofrontera shares from U.S. investors, making any such purchases illegal.

81.     Defendants made false and misleading statements in connection with the 2018 Tender Offer and 2019 Tender Offer and defamatory statements in connection with the 2018 Tender Offer regarding the competency of Biofrontera's officers and directors and the legality of their actions.  Defendants knowingly or recklessly made these statements.  These false and misleading statements were material because reasonable Biofrontera investors, in deciding whether to purchase, hold, tender, or sell Biofrontera shares, would have considered it important to know whether Biofrontera's officers and directors are competent, were conducting the business and operations of Biofrontera in compliance with applicable laws and regulations, whether the statements were made as part of an attempt by Deutsche Balaton and Zours to seize control of Biofrontera, and whether Defendants were complying with U.S. laws as required when soliciting U.S. investors.

82.     These false and misleading statements, including the defamatory statements, were also deceptive and manipulative acts made in connection with the tender offers.  Defendants' statements were deceptive because they defame the competency of Biofrontera and its officers and directors, without disclosing that the intent of Defendants in making those statements was to make

the 2018 Tender Offer more appealing as an alternative to maintaining the current management of Biofrontera.  Defendants' statements were manipulative because they, upon information and belief, negatively impacted Biofrontera's share price during the 2018 Tender Offer period, making DB Biotech's tender offer more appealing, and the price that DB Biotech paid for Biofrontera's shares less than it otherwise would have been required to pay in connection with the 2018 Tender Offer.  The false and misleading statements made in connection with the 2019 Tender Offer manipulated the share price during the 2019 Tender Offer period as well.

83.    Defendants' false and misleading defamatory statements caused injuries to Biofrontera because those statements, upon information and belief, negatively impacted Biofrontera's share price.

84.    The false and misleading defamatory statements made in connection with the 2018 Tender Offer and the false and misleading statements made in connection with the 2019 Tender Offer evince Defendants' pattern of providing inaccurate information to the U.S. investing public in an effort to manipulate the market to their benefit in connection with the 2018 Tender Offer and 2019 Tender Offer.

85.    This Court should enjoin Deutsche Balaton and Zours and their affiliates from purchasing any additional Biofrontera shares or voting any shares that they purchased during the tender offers for a period of six months to prevent them from benefitting from their violation of Section 14(e).  There is no adequate remedy at law.

### Count VII – Control Person Liability under Section 20(a) of the 34 Act
### (Against Zours)

86.    Biofrontera repeats and realleges Paragraphs 1 – 85 as if fully set forth herein.

87.    Under Section 20(a) of the 34 Act, [e]very person who, directly or indirectly, controls any person liable under any provision of this title or any rule or regulation thereunder

shall also be liable jointly and severally with and to the same extent as such controlled person to any person to whom such controlled person is liable."  To plead a prima facie case of Section 20(a) liability, a plaintiff must also plead facts demonstrating that the controlling person knew or should have known that the controlled person was engaging in violations of U.S. securities laws.

88.     Counts IV, V, and VI allege underlying primary violations by Deutsche Balaton of Section 13 and Section 14 of the 34 Act and the underlying regulations.

89.     Upon information and belief, including public filings in Germany on May 27, 2016, Zours controls Deutsche Balaton by virtue of ownership of securities.  Upon information and belief, by virtue of share ownership, Zours possesses actual power and influence over Deutsche Balaton, including the ability to cause Deutsche Balaton to make or omit to make securities filings and other documents necessary to comply with U.S. law.

90.     Upon information and belief, Zours knew or should have known of the securities law violations set forth in Counts IV, V, and VI by virtue of (i) his close knowledge and participation in the management and affairs of Deutsche Balaton, (ii) his awareness of the disclosure and filing requirements of U.S. Securities law, and (iii) a March 14, 2018 correspondence sent by Biofrontera reminding Deutsche Balaton of its obligations under Section 13 of the 34 Act.

WHEREFORE, Biofrontera prays for a judgment against Defendants as follows:

a)  awarding compensatory damages in an amount determined at trial;

b)  awarding punitive damages in an amount to be determined at trial;

c)  declaring that Defendants violated Section 13(d) of the 34 Act on Count IV;

d)  ordering pursuant to Count IV that Defendants and their respective officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them:

  (i)  immediately file with the SEC in accordance with Section 13 of the 34 Act a complete and accurate amended beneficial ownership report on Schedule 13D, correcting the misrepresentations in Defendants' Schedule 13D filings with the SEC that Biofrontera has detailed herein;

  (ii)  are enjoined from voting any of their shares, acquiring any shares or otherwise trying to acquire shares of or change or influence control of Biofrontera until six months after such complete and accurate Schedule 13(d) is filed;

e)  declaring that Deutsche Balaton and Zours violated Section 14(e) of the 34 Act on Count V;

f)  declaring that Defendants violated Section 14(e) of the 34 Act on Count VI;

f)  ordering pursuant to Counts V and VI that Defendants and their officers, agents, servants, employees, and attorneys, and those persons in active concert or participation with them are enjoined from purchasing any additional Biofrontera shares or voting any shares that they purchased during the tender offer for a period of six months;

g)  awarding attorney's fees and costs; and

h)  granting such other and further relief as the Court may deem just and proper.

Dated:  New York, New York
    July 8, 2019

                                McGUIREWOODS LLP

                    By:     */s/ Jeffrey J. Chapman*
                            Jeffrey J. Chapman

Aaron F. Jaroff
Lindsay Brandt Jakubowitz
1251 Avenue of the Americas, 20th Floor
New York, New York 10020
(212) 548-2100
*jchapman@mcguirewoods.com*
*ajaroff@mcguirewoods.com*
*ljakubowitz@mcguirewoods.com*

*Attorneys for Plaintiff Biofrontera AG*